9849

## RENTZ v. CROSBY.

(94 S. E. 1053.)

1. CHATTEL MORTGAGES—CONVERSION—EFFECT.—If a mortgagee converts all the property mortgaged, and the value exceeds the debt, he must account to the mortgagor for the excess, but if there is an actual deficiency he can demand nothing more of the mortgagor.

2. CHATTEL MORTGAGES — CONVERSION — EFFECT. — If the mortgage includes several subjects, and the mortgagee converts one of them only, such act does not of itself discharge the debt.

3. CHATTEL MORTGAGES—CONVERSION—EFFECT.—Where defendant gave a chattel mortgage of a horse and mule, and the mortgagee converted the horse, the mortgagor was entitled as a credit of the value of the horse, and not to its proportion of the debt which its value bore to the value of the entire property.

Before SEASE, J., Jasper, Spring term, 1916.    Reversed.

Controversy without action.    From judgment for plaintiff, defendant appeals.

The following statement appears in the record:

"This was an action for claim and delivery of personal property, to wit: One mouse colored horse mule named Pete (all other property mentioned in the complaint and in the mortgage being either dead or released).

The following is a copy of the note and mortgage under which the plaintiff claims possession:

$250.    Islandtown, S. C., 4-28-1914.    On the 1st day of October next I promise to pay to the order of H. H. Rentz two hundred and fifty and no-100 dollars with 8 per cent. interest from date.    In case of default in the payment thereof I agree to pay all expenses and attorney's fees incurred in the collection thereof, the attorney's fees to be equal to 25 per cent. of the amount due thereon at the time of payment thereof, value received.    Lewis Crosby. (L. S.) Witness: S. A. Rentz.

State of South Carolina, Colleton County.    Whereas, I am indebted to H. H. Rentz in the sum of two hundred and

fifty and no-100 dollars, and have given my promissory note therefor, of even date with these presents, which is hereto annexed, payable on the 1st day of October, A. D. 1914.

Now, in order to secure the payment of said note, and in consideration of the sum of five dollars to me in hand paid, I do hereby grant, bargain and sell unto the said H. H. Rentz the following goods and chattels, free of any incumbrance, to wit: 1 bay mare 8 years old, named Dawson.; 1 mouse colored horse mule, six years old, named Pete; 1 roan horse, eight years old, named Mack; 1 black mare, 4 years old, named Nellie (black mule named Nellie are released from this obligation). To have and to hold, all and singular, the said goods and chattels, unto the said H. H. Rentz and his assigns forever, the legal title to such crop or crops to vest in the mortgage immediately upon the same coming into *esse.* In case of serious injury to said property or any part thereof, or the loss of any part thereof by death or otherwise .... agree to report the same immediately to the said .... and in case of .... failure to do so, then, and in that event, the said .... shall have the right at its option to treat the entire mortgage debt as due and payable at once and take into .... possession the property hereby mortgaged, and sell and dispose of the same as hereinafter provided.

Provided, nevertheless, That the said mortgagor shall pay to the said H. H. Rentz the sum hereinabove mentioned when due, then this mortgage is to be void, otherwise to remain in full force and effect.

And provided, further, That the said mortgagor may retain possession of the said goods and chattels until default be made in the payment of the said note; or the performance of any of the conditions hereof, but if the same is not paid when due, or if before the said note is due, the said mortgagor shall attempt to make way with or remove said goods and chattels, or any part thereof, from the place where they now are, or shall neglect to take good care of the same and

maintain it in as good condition as it now is, then, in either event, the said H. H. Rentz or his agents shall have the right, without suit or process, to take possession of the said goods and chattels wherever they may be found, and may sell the same, or so much as may be necessary, at public auction for cash after giving notice by advertisement five days, and shall apply the proceeds of said sale to the discharge of said debt, interest and expenses, and the attorney's fees incurred by the said mortgagee in the collection of the debt secured by this mortgage, said attorney's fees to be equal to 25 per cent. of the whole amount due, and to pay any surplus to the mortgagor and his assigns.

In witness hereof, I, the said mortgagor, do hereunto set my hand and seal this the 28th day of April, A. D. 1914. Lewis Crosby. (L. S.)   Signed, sealed and delivered in the presence of S. A. Rentz.   (Proof of execution omitted here.)   (Also certificate of record.)

It is admitted that this mortgage is past due and that only the sum of $65 has been paid thereon, this payment being made on the day the paper became due.

It is admitted, for the purpose of this decision, that the mare described in the mortgage—one bay mare, eight years old, named Dawson—was taken in under the mortgage after it became due, and that she had never been sold, but that she has been converted to the use of the plaintiff.   This brings us to the only issue involved in the case.

Should the defendant, in the action of claim and delivery for the mule named Pete, be allowed credit on his note and mortgage for the full market value of this mare at the time she was taken?   If the Court decides in the affirmative, then, and in that event, the plaintiff is to abandon the case and each side is to bear his own costs.   Is the defendant entitled to credit on his note and mortgage to the extent of the proportion only in value that the mare, Dawson, bore at the time of seizure to the value of the entire mortgaged property?   If the Court decides in the affirmative of this

proposition, then, and in that event, the defendant is to abandon his defense, and either pay the amount due on the note and mortgage with interest and attorney's fees, as provided in the note and mortgage, or he will return the mule described in the complaint as Pete, and which was replevied by the defendant. If the mule at the termination of this suit is in as good condition as it was when it was replevied by the defendant (and this fact is to be determined by the sheriff of Jasper county), then, and in this event, the plaintiff will receive the same in full satisfaction of his judgment, without costs. If not in as good condition, then, in such case, the plaintiff will receive the mule and have the right to proceed against the bond of the defendant for the difference in value of the mule at the time of the commencement of this action and at the time the mule is received by the plaintiff. Either party to this agreement of facts shall have the right of appeal from the decision of the Circuit Court—no costs to be taxed by either party."

*Messrs. J. P. Wise* and *H. Klugh Purdy,* for appellant. *Mr. Purdy* cites: 73 S. C. 403; 29 S. C. 64.

*Messrs. Padgett & Moorer* file no argument, but rely on *Green v. Scruggs,* 73 S. C. 403.

January 7, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Crosby was and is debtor to Rentz, and to secure payment of the debt Crosby gave to Rentz a mortgage on a horse and mule. There were other subjects in the mortgage than those, but for simplicity we restrict the statement to a horse and a mule. The mortgage fell due; Rentz converted the horse and now sues for the mule. After two ineffective trials before juries, the cause was submitted to the Circuit Court as a controversy without action. Let the "case" be reported.

The only issue of law is, How much credit on the debt in money must Rentz allow Crosby for the horse he took? The Circuit Court held "to the extent of the proportion in value that the property converted bore to the entire property;" and then gave judgment for the mule.

It is settled in this State, by dictum if not by opinion, that if a mortgagee shall convert to his own use all the property embraced in the mortgage, and the value of it shall exceed the debt, then the mortgagee must account to the mortgagor for such excess; that if there be no excess, and even if there be an actual deficiency, the mortgagor may demand nothing more of the mortgagee. *Moody v. Haselden,* 1 S. C. 129; *Kendall v. County,* 28 S. C. 258, 5 S. E. 622; *Bank v. Holman,* 31 S. C. 161, 9 S. E. 824; *Green v. Scruggs,* 73 S. C. 406, 53 S. E. 612. It is not worth while to consider the rationale of the opinions; it is sufficient to rest upon the conclusions they announce.

It is also settled by opinion that if the mortgage includes several subjects, and the mortgagee shall convert one subject only, then such act of itself will not discharge the mortgage debt. *Trimmer v. Vise,* 17 S. C. 500, 43 Am. Rep. 624; *Moody v. Haselden, supra; Hull v. Young,* 29 S. C. 70, 6 S. E. 938; *Green v. Scruggs, supra.* The legal effect of such last suggested act is the issue now up, and it was the exact issue decided in *Green v. Scruggs.* The only difference between counsel is the meaning of that case. The expression of the Circuit Court before quoted was taken from *Green v. Scruggs,* 73 S. C. 407, 53 S. E. 612, and the expression in *Green v. Scruggs* was taken from *Trimmer v. Vise,* 17 S. C. 504, 43 Am. Rep. 624. In the earlier case of *Moody v. Haselden,* the direction of the Court was to ascertain the value of that property which the mortgagee had received, and, should it fall short of the debt, then the mortgagee should have judgment for the balance. In the subsequent case of *Hull v. Young,* the Court used this language:

"A purchase of a part only of the mortgaged premises operates as an extinguishment *pro tanto* only, and the balance of the mortgage debt may be enforced against the remainder of the mortgaged premises."

The affirmation in *Trimmer v. Vise* and *Green v. Scruggs* that the mortgagor is entitled "to credit on his note to the extent of the proportion in value that the property converted bears to the value of the entire property," is, we venture to think, not altogether clear in expression.

There is no evidence in the record of the value of the horse or the mule; if the value of the horse be assumed to be $100 and the combined value of the horse and mule be assumed to be $300, then the only proportion which the first sum could bear to the second sum is that of one to three. But in the assumed case the mortgagor would be entitled to a credit of $100 on the debt. The meaning, then, of the quotation under consideration is the same as the meaning which was expressed in *Moody v. Haselden* and *Hull v. Young,* and it is that the mortgage debt shall be credited with the market value of the converted horse. 11 Corpus Juris, p. 686, sec. 465. The consequence of such a credit is fixed by the agreed "case" below.

Our judgment is that the order of the Circuit Court is wrong; it is reversed, and the cause is remanded to that Court to carry out the stipulations of the "case" there agreed upon.

MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. CHIEF JUSTICE GARY dissents.

MR. JUSTICE FRASER. I think *Green v. Scruggs* clearly fixes the proportionate value and not the market value; so I dissent.